1

2

3

4

5

6          **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

8  **GARY WILLIAM CHURCH,**              )
                                         )
9            **Petitioner,**             )
                                         )
10           **v.**                      )    **CIV 07-1236 PHX FJM (MEA)**
                                         )
11  **DORA B. SCHRIRO, et al.,**         )    **REPORT AND RECOMMENDATION**
                                         )
12           **Respondents.**            )
    ─────────────────────────────────   )

13

14  **TO THE HONORABLE FREDERICK J. MARTONE:**

15          On June 22, 2007, Petitioner filed a *pro se* petition

16  for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

17  Petitioner challenges the sentence imposed pursuant to his

    criminal conviction by an Arizona state court.  Petitioner filed

18  a motion to amend his petition on August 10, 2007, which motion

19  was granted and Respondents were ordered to answer the claims

20  for relief stated in the motion to amend.

21          Respondents filed an Answer to Petition for Writ of

22  Habeas Corpus ("Answer") on October 24, 2007.  Docket No. 14.

23  Respondents assert some of Petitioner's habeas claims were not

24  properly exhausted in the Arizona state courts and are

25  procedurally defaulted.  Respondents further contend

26  Petitioner's other claims were properly denied by the state

27  courts.  Because Petitioner is not entitled to federal habeas

28

relief, Respondents argue, the petition must be denied and dismissed with prejudice.

Petitioner filed a motion to appoint counsel, which included a substantive reply to the state's answer to the petition on November 19, 2007. <u>See</u> Docket No. 15. Petitioner also filed a response [Docket No. 19] to the Respondents' answer to his petition on January 28, 2008.

**I Procedural History**

In August of 2001 a grand jury indicted Petitioner and a female co-defendant with twenty counts of crimes comprised of sexual abuse of a minor, sexual conduct with a minor, sexual exploitation of a minor, indecent exposure, and public sexual indecency. <u>See</u> Answer, Exh. G. The indictment alleged crimes involving four different identified female victims (referred to by the trial court as Ashley, Lisa, Tiffany, and Samantha), two of whom were under the age of 15 and two of whom were under the age of 13. <u>Id.</u>, Exh. G.[1] The indictment alleged some of the

_____

[1] Eight counts were alleged against Petitioner only, and six counts were alleged against both Petitioner and his co-defendant. Answer, Exh. G. Counts 16 and 17 alleged both defendants had created or duplicated a visual medium depicting exploitive conduct with a minor under the age of 15, within the period January of 2000 through July of 2001. These counts referred to videotapes, which were introduced at the trial as Exhibit 5 (which was recorded on the search warrant impound sheet as item 13) and Exhibit 7, which was "part" of search warrant impound sheet "bag" 20. The record indicates Exhibit 7 was comprised of three videotapes, one of which was no longer viewable, i.e., item "20A," and item "number 7" and item "number 12". <u>See</u> Answer, Exh. C at 33-34 & Exh. D at 6-11. Count 18 asserts Petitioner created "the third child pornographic videotape referenced in DR number 11265437", i.e., item number 12, introduced at trial as Exhibit 7. Answer, Exh. D at 11-12; Exh. G at 7. Count 20 was also supported by item 12 in Exhibit 7. The investigator described this videotape as depicting Petitioner and a "brunette child identified as Michelle and another child that's been identified..." <u>Id.</u>, Exh. D at

crimes occurred "during the time periods" of January 1, 2000, to December 31, 2000.  Id., Exh. G.  Some of the counts were alleged with greater specificity with regard to the date the crimes occurred.  Id., Exh. G.  For instance, Count 4 was alleged to have occurred at some time from March 23, 2001, to July 27, 2001, while Count 7 was alleged to have occurred from August 1, 2000, through July 31, 2001.  Id., Exh. G.

       At a pre-trial hearing conducted May 17, 2002, Petitioner repeatedly waived his right to a jury trial.  See id., Exh. A at 9 ("It's agreeable. ... I have requested trial by judge.").  In response to a question from the state court regarding whether he understood "the significance of waiving the jury trial and trying [the case] to a judge," Petitioner replied: "Yes, I do, Your Honor."  Id., Exh. A at 13. Petitioner continued:

> my state of concern, Your Honor, there is no way I can get a fair trial in front of a jury due to the nature of the charges with the press having their field day as would be with the priests that are having this.  It's been brought by the newspapers.  I do not feel you could find 12 people that have not been thoroughly convinced prior to this, that could actually honestly stand up and give a fair jury hearing on this.  That is why I requested it by bench.

Id., Exh. A at 13-14.

       On that date, Petitioner signed a written waiver of his right to a trial by jury.  Id., Exh. A at 25-26.  Before

---

12 (the testimony was interrupted by defense counsel's objection). The undersigned notes that, during the course of the police investigation of Petitioner, the victims had indicated Petitioner had photographed a neighborhood child named "Michelle."

accepting Petitioner's waiver and granting his motion for a bench trial, the state court explained the rights Petitioner was waiving by choosing a bench trial and Petitioner again stated he understood his rights and was waiving those rights. <u>Id.</u>, Exh. A at 26. The state court concluded Petitioner had knowingly, intelligently, and voluntarily waived his right to a trial by jury. <u>Id.</u>, Exh. A at 28.

Prior to trial, Petitioner's appointed counsel sought, unsuccessfully, *inter alia*, to sever his trial from that of his co-defendant, and also sought to sever the counts of the indictment with regard to each of the four identified victims into separate trials. <u>Id.</u>, Exh. A & Exh. K.

Petitioner's trial commenced December 9, 2002. <u>Id.</u>, Exh. B. The trial court heard testimony on December 9, December 10, and December 11, including testimony from the victims. <u>Id.</u>, Exhs. B, C, D. The trial court denied Petitioner's motion to suppress evidence in the form of videotapes, and the court viewed three videotapes which were described as depicting Petitioner and his co-defendant engaged in sex acts with one of the victims, Samantha, and two different unidentified minor females. <u>Id.</u>, Exh. D & Exh. E.

After hearing closing arguments, on December 19, 2002, the trial court found Petitioner guilty on all counts, and also convicted Petitioner's co-defendant on all but one count. <u>Id.</u>, Exh. E. On February 28, 2002, after hearing Petitioner and his counsel and consideration of a presentence report, the state court found no mitigating factors and concluded the maximum

-4-

sentences were "necessary and appropriate" with regard to Petitioner's convictions. Id., Exh. F at 24.[2] With regard to the sentences imposed, a sentence of 1.5 years on Count 4, indecent exposure, and a term of two years on Count 5, public indecency with a minor, the sentences were aggravated sentences. Id., Exh. F. With regard to his other convictions, Petitioner was sentenced to, *inter alia*, three consecutive terms of life imprisonment without the possibility of release for 35 years, and three consecutive sentences of 24 years imprisonment, and three consecutive terms of 27 years imprisonment. Id., Exh. F at 25-26.

Petitioner took a direct appeal of his convictions and sentences. Id., Exh. I. Petitioner's appointed counsel filed an Anders brief declaring he could find no arguable non-frivolous issues to raise on Petitioner's behalf. Id., Exh. I. Petitioner filed a *pro se* appeal brief alleging numerous claims for relief. Id., Exh. J. In an order issued November 26, 2003, the Arizona Court of Appeals directed the state to address several issues regarding Petitioner's convictions and sentences, including: the specificity of the indictment; whether some counts should have been severed for trial; whether evidence was seized in violation of the Fourth Amendment; whether

---

[2] At his sentencing, Petitioner asserted he had been denied his right to due process of law and the effective assistance of counsel, and that the videotapes could not have been made in his motor home as alleged and that "It wasn't proven it was done in that time period." Answer, Exh. F at 20. Petitioner further alleged that two of the victims' stepfather had been accused of molesting them (Ashley and Tiffany are sisters) and that another person had molested a third victim. Id., Exh. F at 21.

Petitioner's right to self-representation was violated; whether there was sufficient evidence to support the guilty verdicts; and whether the trial court erred by denying Petitioner's motion for a new trial.  <u>Id.</u>, Exh. K.

On March 16, 2004, after reviewing the pleadings, the Arizona Court of Appeals issued a decision affirming Petitioner's convictions and sentences.  <u>Id.</u>, Exh. M.  The Arizona Supreme Court denied review of this decision on October 28, 2004.  <u>Id.</u>, Exh. N.

Prior to the date the Arizona Supreme Court denied his direct appeal, Petitioner filed a notice of post-conviction relief in the Arizona Superior Court pursuant to Rule 32, Arizona Rules of Criminal Procedure.  <u>Id.</u>, Exh. O.  Counsel was appointed to represent Petitioner in his post-conviction proceedings.  <u>Id.</u>, Exh. P.  On August 25, 2004, Petitioner's appointed counsel filed a motion to determine counsel, informing the state court that Petitioner wished to represent himself in his post-conviction proceedings.  <u>Id.</u>, Exh. S.  On September 8, 2004, Petitioner was given permission to represent himself and the Superior Court ordered Petitioner to replace his previously-submitted *pro se* brief with a brief that complied with the court's page-limit of 25 pages.  <u>Id.</u>, Exh. T.  Petitioner filed a brief which complied with the Superior Court's order on October 3, 2004.  <u>Id.</u>, Exh. U.

In a decision issued April 18, 2005, the Superior Court concluded that, except for Petitioner's claim of ineffective assistance of counsel, Petitioner's claims for post-conviction

relief were precluded by his failure to raise them at trial or in his direct appeal. Id., Exh. W. With the permission of the state court, Petitioner filed a delayed petition for review of the Superior Court's decision with the Arizona Court of Appeals. Id., Exh. DD. The Court of Appeals denied review of the trial court's denial of post-conviction relief on April 4, 2007. Id., Exh. EE.

Petitioner filed a second action for post-conviction relief in the Maricopa County Superior Court on December 20, 2005. Id., Exh. FF. Petitioner asserted his sentences violated the doctrine of Blakely v. Washington and his Eighth Amendment right to be free of cruel and unusual punishment. Id., Exh. FF. The trial court dismissed Petitioner's Eighth Amendment claim as waived and therefore precluded and allowed Petitioner to file supplemental briefing on his Blakely claim. Id., Exh. GG. After Petitioner's supplemental pleading was filed, the trial court ordered the state to address Petitioner's Blakely claim. Id., Exh. JJ.

In a decision issued June 15, 2006, the Superior Court concluded Petitioner's Blakely claim was waived and therefore precluded because Petitioner did not raise the claim in his first action for post-conviction relief. Id., Exh. KK. The trial court also denied Petitioner's Blakely claim on the merits of the claim. Id., Exh. KK. Petitioner sought review of this decision by the Arizona Court of Appeals, which denied review on July 12, 2007. Id., Exh. MM.

-7-

In his action for federal habeas relief Petitioner asserts:

1.  He was denied his right to the effective assistance of trial and appellate counsel.

2.  His right to due process was violated because the prosecution did not prove his guilt beyond a reasonable doubt.

3.  His Fourth Amendment rights were violated by the execution of an improper search warrant and by the seizure of materials protected by the First Amendment.

4.  The indictment was unconstitutionally vague.

5.  He was deprived of his right to due process of law because the trial judge was biased against him.

6.  He was deprived of due process of law because his conviction was based on the victims' unreliable testimony.

7.  He was deprived of his constitutional right to confront witnesses.

8.  He was deprived of his right to due process of law because the burden of proof was improperly shifted to the defense.

9.  His rights to due process and a fair trial were violated by the introduction of evidence of uncharged acts.

10.  His right to due process of law was violated because his counsel allowed him to appear at his bench trial in prison clothing, including shackles.

With regard to Respondents' assertion that Petitioner did not properly exhaust all of his claims in the state courts, Petitioner declares that Respondents' reliance on the exhaustion

doctrine admits, "by default, that each and every one of Petitioner's claims are true and valid." Docket No. 19 at 2. Petitioner alleges his state-appointed trial and appellate counsel "refused to present Petitioner's issues at both trial and in the appellate court." Id. Petitioner alleges that any failure to properly raise any issue in his direct appeal "is imputed to the state through its appointed counsel." Id. at 4.

Petitioner further argues that any procedural default of any of his habeas claims "is excused by the failings of appellate counsel." Id. However, Petitioner also correctly notes that ineffective assistance of appellate counsel establishes cause for the procedural default of an ineffective assistance of trial counsel claim only when the claim regarding appellate counsel has itself been exhausted. Id.

Petitioner contends that, because his other claims "stem from, and are inextricably interwoven with" his Sixth Amendment claims, "this court must grant relief for them also." Id. at 5. Petitioner also maintains he is factually innocent of the charges against him. Id. at 6. Petitioner references an investigative report in which Lisa's mother stated her daughter first met Petitioner in January of 2001. Id. at 6, citing App. A, Exh. I & BB. Petitioner also references a police report indicating Michelle's mother told the detective her daughter had moved to Idaho in August of 2000, which Petitioner asserts "[makes] it physically impossible for him to appear in a film with them both thus, 'actual innocence' is established." Id. Petitioner also re-asserts the merits of his claims for federal

-9-

habeas relief.  Id. at 12-26.  Petitioner emphasizes that there were contradictions in the statements and testimony of the victims and that their statements and testimony were prompted by police.  Id.  Accordingly, Petitioner argues, there was insufficient evidence to support his convictions.

## II Analysis

### A. Applicable law

#### 1. Exhaustion

A state prisoner must exhaust a federal habeas claim in the state courts before the District Court may grant relief on the merits of the claim.  See, e.g., Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 2554-55 (1991).  To properly exhaust a federal habeas claim, the petitioner must afford the state the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner.  See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).  The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).  See also Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007) (providing a thorough and well-reasoned discussion of what constitutes the "highest court" in Arizona for purposes of

-10-

exhausting habeas claims implicating a non-capital conviction or sentence).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). See also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003). In Baldwin v. Reese the Supreme Court reiterated the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors. See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present a federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.

> In order to fulfill exhaustion requirements, a petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court. Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, [] (1971). State courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis. However, a petitioner may provide further facts to support a claim in federal district court, so long as those facts do not fundamentally alter the legal claim already considered by the state courts.

Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007), cert. denied, 2008 WL 424532 (Feb. 19, 2008) (some internal citations and quotations omitted).

-11-

**2. Procedural default**

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c) (1994 & Supp. 2007). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. See Woodford v. Ngo, 541 U.S. 81, 126 S. Ct. 2378, 2387 (2006); Castille, 489 U.S. at 351, 109 S. Ct. at 1060. If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. See, e.g., Woodford, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims. See Castille, 489 U.S. at 351-52, 109 S. Ct. at 1060; Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir. 1988). Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); Coleman, 501 U.S. at 727-28, 111 S. Ct. at 2553-57; Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by

-12-

'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" <u>Ellis v. Armenakis</u>, 222 F.3d 627, 632 (9th Cir. 2000), <u>quoting</u> <u>Wells v. Maass</u>, 28 F.3d 1005, 1008 (9th Cir. 1994).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not previously fairly presented to the state courts. <u>See</u> <u>Beaty v. Stewart</u>, 303 F.3d 975, 987 (9th Cir. 2002)**.**

> Federal courts hearing habeas petitions may not review state convictions, even for federal constitutional claims, if the state court judgment procedurally barring the petitioner's claims rests on an independent and adequate state law ground. []. Procedural default, a particular type of adequate and independent state ground, applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements**...**

<u>Insyxienqmay v. Morgan</u>, 403 F.3d 657, 665 (9th Cir. 2005) (internal citations and quotations omitted). <u>See also</u> <u>Stewart v. Smith</u>, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the

-13-

1   grounds of a procedural bar); <u>Ortiz v. Stewart</u>, 149 F.3d 923,

2   931-32 (9th Cir. 1998); <u>Carriger v. Lewis</u>, 971 F.2d 329, 333

3   (9th Cir. 1992).

4          **3. Cause and prejudice**

5          Federal habeas relief based on a procedurally defaulted

6   claim is barred unless the petitioner can demonstrate a

7   fundamental miscarriage of justice will occur if the Court does

8   not consider the merits of the claim, or cause and actual

9   prejudice to excuse the petitioner's default of the claim. <u>See</u>

10  <u>House v. Bell</u>, 547 U.S. 518, 126 S. Ct. 2064, 2076 (2006);

11  <u>Dretke v. Haley</u>, 541 U.S. 386, 392-93, 124 S. Ct. 1827, 1852

12  (2004).

13         "Cause" is a legitimate excuse for the petitioner's

14  procedural default of the claim and "prejudice" is actual harm

15  resulting from the alleged constitutional violation. <u>See</u> <u>Thomas</u>

16  <u>v. Lewis</u>, 945 F.2d 1119, 1123 (9th Cir. 1991). To demonstrate

17  cause, a petitioner must show the existence of some external

18  factor which impeded his efforts to comply with the state's

19  procedural rules. <u>See</u> <u>Vickers v. Stewart</u>, 144 F.3d 613, 617

20  (9th Cir. 1998); <u>Martinez-Villareal v. Lewis</u>, 80 F.3d 1301, 1305

21  (9th Cir. 1996). To establish prejudice, the petitioner must

22  show that the alleged constitutional error worked to his actual

23  and substantial disadvantage, infecting his entire trial with

24  constitutional violations. <u>See</u> <u>Vickers</u>, 144 F.3d at 617;

25  <u>Correll v. Stewart</u>, 137 F.3d 1404, 1415-16 (9th Cir. 1998).

26  Establishing prejudice requires a petitioner to prove that, "but

27  for" the alleged constitutional violations, there is a

28                          -14-

reasonable probability he would not have been convicted of the same crimes.  See Manning v. Foster, 224 F.3d 1129, 1135-36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause.  See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent.  See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief).  To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged. See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

Prior to 1996, the federal courts were required to dismiss a habeas petition which included unexhausted claims for

-15-

federal habeas relief.   However, section 2254 now states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(2) (1994 & Supp. 2007).

### 4.   Standard of review regarding exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or one involving an unreasonable application of clearly established federal law, or unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.   See 28 U.S.C. § 2254(d) (1994 & Supp. 2007); Carey v. Musladin, 127 S. Ct. 649, 653 (2006).   When more than one state court has adjudicated a claim, the Court must analyze the last reasoned decision to determine if the state's denial of relief on the claim was clearly contrary to federal law.   See Barker v. Fleming, 423 F.3d 1085, 1091-92 & n.3 (9th Cir. 2005), cert. denied, 126 S. Ct. 2041 (2006).

> A state court's decision is "contrary to" our clearly established law if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

Mitchell v. Esparza, 540 U.S. 12, 14, 124 S. Ct. 7, 10 (2003) (internal citations and quotations omitted).   If the state

-16-

court's decision is contrary to clearly established law, the Court must review whether the petitioner's constitutional rights were violated without the deference to the state court decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Panetti v. Quarterman, 127 S. Ct. 2842, 2858 (2007); Rompilla v. Beard, 545 U.S. 374, 390, 125 S. Ct. 2456, 2467-68 (2005); Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008).

The standard of review stated in section 2254 is not the same as the "clear error" standard applied by United States Courts of Appeal when reviewing the decisions of lower courts. See Lockyer v. Andrade, 538 U.S. 63, 70-71, 123 S. Ct. 1166, 1172-73 (2003). "The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id., 538 U.S. at 75, 123 S. Ct. at 1175. See also Martinez v. Garcia, 379 F.3d 1034, 1037-38 (9th Cir. 2004); Hall v. Director of Corr., 343 F.3d 976, 986 (9th Cir. 2003); Clark v. Murphy, 331 F.3d 1062, 1068 (9th Cir. 2003).

United States Supreme Court holdings at the time of the state court's decision are the source of "clearly established federal law" for the purpose of federal habeas review. Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000); Barker, 423 F.3d at 1093. The Court must decide whether the United States Supreme Court has "clearly established" the point of law Petitioner relies upon as a basis for habeas relief by examining the holdings of the Supreme Court, rather than the

-17-

opinions of the lower courts or the Supreme Court's dicta.  See Lockyer, 538 U.S. at 71, 123 S. Ct. at 1172.  Unless United States Supreme Court precedent has clearly established a rule of law, the writ will not issue based on a claimed violation of that rule, see Alvarado v. Hill, 252 F.3d 1066, 1069 (9th Cir. 2001), because federal courts are "without the power" to extend the law beyond Supreme Court precedent.  See Dows v. Wood, 211 F.3d 480, 485 (9th Cir. 2000).  Accordingly, if the Supreme Court has not addressed an issue in its holdings, the state court's adjudication of the issue cannot be contrary to, or an unreasonable application of, clearly established federal law. See Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007), citing Kane v. Espitia, 546 U.S. 9, 10, 126 S. Ct. 407, 408 (2006).  "Although only Supreme Court law is binding on the states, our Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003), quoted in Chia v. Cambra, 360 F.3d 997, 1002-03 (9th Cir. 2004).

**B. Petitioner's claims for relief**

**1. Petitioner contends he was denied his right to the effective assistance of trial and appellate counsel.**

Petitioner asserts he is entitled to federal habeas relief because he was denied the effective assistance of trial and appellate counsel.  Petitioner alleges his trial counsel failed to adequately confer with Petitioner and that counsel did not adequately challenge the search warrant or the grand jury

-18-

indictment.  Petitioner also maintains his trial counsel failed to adequately cite to relevant precedent in his motion to sever counts for trial and that counsel did not fully investigate Petitioner's claims of exculpatory evidence.  Petitioner avers his trial counsel "coerced" Petitioner into a bench trial and that counsel did not properly argue mitigation at Petitioner's sentencing.  Petitioner further asserts his trial counsel failed to file post-trial motions.  Additionally, Petitioner contends his appellate counsel failed to raise legitimate issues in his direct appeal.

Petitioner properly exhausted all of the above-stated ineffective assistance of trial counsel claims, except his allegation that his trial counsel did not properly argue mitigation at Petitioner's sentencing and that his trial counsel failed to file post-trial motions.  Petitioner failed to properly exhaust those specific claims because he did not raise them in his first state action for post-conviction relief.[3]

---

[3] In his first action for post-conviction relief, Petitioner asserted his trial counsel failed to adequately raise issues in the motion to suppress the videotape evidence.  Petitioner also asserted he had provided e-mails from his trial counsel and appointed investigator establishing his counsel's inadequate performance.  Petitioner averred his counsel "failed to uphold [Petitioner's] constitutional right to compel witnesses in his behalf or to present evidence in his favor."  Answer, Exh. U at 6.  Petitioner further alleged his counsel had "waived" this right by not interviewing "potential witnesses" and refusing to use "available evidence" to impeach prosecution witnesses.  Id., Exh. U at 6-7.  Petitioner also argued his counsel did not subject the prosecution's case to meaningful adversarial testing.  Id., Exh. U at 7.  Additionally, Petitioner asserted in his action for post-conviction relief that he had provided documentation of "counsel's coercion of Defendant's waiver of jury trial, failure to maintain reasonable contact with Defendant or to provide reasonable consultation, and failure to maintain loyalty to his client."  Id., Exh. U at 7.  Petitioner also

-19-

Additionally, Petitioner did not properly exhaust any claim regarding the effectiveness of his appellate counsel because he did not raise any claim of ineffective assistance of appellate counsel in his first Rule 32 action. See Strickland v. Washington, 466 U.S. 668, 690, 104 S. Ct. 2052, 2066 (1984) (requiring the habeas petitioner to identify the specific acts of counsel which constituted their deficient performance to exhaust the claim); Moorman v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005) (holding a petitioner could not argue ineffective assistance of counsel claims in a habeas action if they had not raised the specific factual basis for the claim in the state courts), cert. denied, 126 S. Ct. 2984 (2006); Carriger, 971 F.2d at 333-34; Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004).

In denying Petitioner's claims he was deprived of the effective assistance of counsel, the Arizona court concluded:

> Mr. Church's complaints about his lawyer are numerous and mostly consist of generalities. On none of his complaints does Mr. Church sustain his burden of proving that his lawyer's conduct of his case was unreasonable under the circumstances or that there is a reasonable likelihood that if his lawyer had acted differently, the results obtained would have been better for Mr. Church. Simply put, Mr. Church has not presented a colorable claim of ineffective assistance of counsel.

Answer, Exh. W at 2.

To state a claim for ineffective assistance of counsel,

_____

alleged his trial counsel failed to "renew or preserve motions..." Id., Exh. U at 7. Although Petitioner alleged his counsel's performance was deficient, he did not explain how the deficient performance prejudiced the outcome of his criminal proceedings.

-20-

a petitioner must show that his attorney's performance was deficient and that the deficiency prejudiced the petitioner's defense.  See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance.  See id.

To prevail on the merits of a habeas claim of ineffective assistance of counsel, "it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.  An unreasonable application of federal law is different from an incorrect application of federal law."  Woodford, 537 U.S. at 25, 123 S. Ct. at 360 (internal quotations omitted).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*...."  Id., 466 U.S. at 690-91, 104 S. Ct. at 2066 (emphasis added).

To succeed on an assertion his counsel's performance was deficient because counsel failed to raise a particular argument the petitioner must establish the argument was likely to be successful, thereby establishing that he was prejudiced by

his counsel's omission.  See Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir.), cert. denied, 128 S. Ct. 722 (2007); Weaver v. Palmateer, 455 F.3d 958, 970 (9th Cir. 2006), cert. denied, 128 S. Ct. 177 (2007).  A defendant has no constitutional right to compel counsel to raise particular objections if counsel, as a matter of professional judgment, decides not to raise those objections.  See Jones v. Barnes, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983) (declining to promulgate "a per se rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed").

As a general proposition, defense counsel is duty-bound to consult with his client regarding critical decisions, including questions of defense strategy.  See Strickland, 466 U.S. at 688, 104 S. Ct. at 2064-65.  "That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.'"  Florida v. Nixon, 543 U.S. 175, 187, 125 S. Ct. 551, 560 (2004).  The conclusion would be otherwise if, rather than the type of deficiencies alleged by Petitioner, his counsel had made a decision which could not properly be made on a defendant's behalf, i.e., whether to plead guilty, whether to waive a jury,[4] to testify, or to take an

---

[4] Petitioner asserts his counsel "coerced" him into accepting a bench trial, as distinguished from a claim that his counsel waived Petitioner's right to a jury trial without his consent. The decision in this matter, as acknowledged by Petitioner himself, see Answer, Exh. A at 13-14, was obviously a strategic decision by Petitioner and his counsel, i.e., that a judge would be more likely to see past the nature of the evidence to any reasonable doubt whereas a jury would be unable to be unprejudiced given the nature of the evidence and the acts alleged.

1  appeal.   Id.

2          Petitioner's assertion that his counsel "coerced" him
3  into waiving his right to a jury trial is completely belied by
4  the transcripts of a hearing conducted May 17, 2002, before the
5  state trial court, during which Petitioner repeatedly and
6  emphatically stated his desire for a bench trial.   See Answer,
7  Exh. A (passim).   Petitioner signed a written waiver of his
8  right to a jury trial on that date which also indicated his
9  choice to proceed to a bench trial.   Id., Exh. A.

10         The undersigned's review of the record indicates
11 Petitioner's trial counsel's performance was not deficient.
12 Counsel competently argued the issue of severing Petitioner's
13 trial from that of his co-defendant and also argued for the
14 suppression of evidence, including the suppression of testimony.
15 Petitioner's trial counsel vigorously advocated for suppression
16 of the videotapes as prejudicial and also forcefully asserted
17 his client's right to view the videotapes prior to trial.   See
18 id., Exh. A at 30 & Exh. B at 7.   Trial counsel thoroughly
19 cross-examined the victim witnesses and adequately challenged
20 the reliability of their statements.   Additionally, trial
21 counsel regularly noted for the record the instances on which he
22 and Petitioner disagreed regarding trial strategy.   See, e.g.,
23 id., Exh. A at 7 ("I want to put that on the record, my
24 concerns.  And I also want to put on the record that my client
25 on this issue regarding the severance did not agree with me, to
26 sever defendants.") & Exh. A at 30 ("There is an issue regarding
27 the expert.  I have spoken to an expert.  My opinion is that I

28                              -23-

am not going to need her, however, again, Mr. Church and I disagree regarding that issue.") & Exh. A at 34 ("also regarding any additional pretrial motions that my client wants me to file, and that I have a disagreement as to whether or not they should be filed, because as I pointed out to him, I also have an ethical obligation regarding not filing what I believe [are] frivolous motions.").

The Arizona courts' conclusion that Petitioner was not deprived of his right to the effective assistance of trial counsel was not contrary to nor an unreasonable application of federal law. See Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007), cert. denied, 128 S. Ct. 928 (2008). Therefore, Petitioner is not entitled to federal habeas relief on this basis.

Additionally, Petitioner has not shown cause for, nor prejudice arising from his procedural default of his claim that he was deprived of the effective assistance of appellate counsel, or with regard to the ineffective assistance of trial counsel claims predicated on facts not asserted in the state court in his first action for post-conviction relief. Petitioner contends his state-appointed counsel "refused to present Petitioner's issues at both trial and in the appellate court." Docket No. 19 at 2. Petitioner alleges that any failure to properly raise any issue in his direct appeal "is imputed to the state through its appointed counsel." Id. at 4. Petitioner further asserts that any procedural default of a claim "is excused by the failings of appellate counsel." Id.

However, Petitioner also correctly notes that ineffective assistance of appellate counsel establishes cause for the procedural default of an ineffective assistance of trial counsel claim only when the claim regarding appellate counsel has itself been exhausted. <u>Id.</u>   Petitioner also contends that, because his other claims "stem from, and are inextricably interwoven with" his Sixth Amendment claims, "this court must grant relief for them also." <u>Id.</u> at 5.

Notwithstanding Petitioner's arguments, Petitioner did not properly exhaust his Sixth Amendment claim regarding his appellate counsel in the Arizona state courts by raising the claim in his first action for post-conviction relief.   As Petitioner himself notes, ineffective assistance of counsel does not establish cause for the failure to properly exhaust an underlying claim in the state court unless the specific Sixth Amendment claim providing the basis for cause was itself exhausted.   <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000) (holding ineffective assistance can constitute cause only when that claim itself is exhausted). Accordingly, Petitioner is not entitled to consideration of the merits of his procedurally defaulted claims of ineffective assistance of trial and appellate counsel.

**2.   Petitioner asserts his right to due process was violated because the state did not prove his guilt beyond a reasonable doubt.**

Respondents contend Petitioner did not properly exhaust this claim because Petitioner asserted in state court only that

the verdicts were against the weight of the evidence.  <u>See</u>
Answer at 22, citing Exh. J at 31-53.  Respondents argue that,
because Petitioner did not fairly present a federal due process
claim to the state courts by his "vague allusion" to other
constitutional rights, the claim has been procedurally
defaulted.

     In his direct appeal, Petitioner asserted the "weight
of evidence" required the reversal of his convictions.
Petitioner alleged that, although three of the victims testified
to "oral sexual contact" with Petitioner, "it doesn't mean that
they actually did."  <u>Id.</u>, Exh. J at 32.  Petitioner alleged that
the victims' testimony was coached, and that it "is not enough
to meet the standard for preponderance, let alone 'beyond a
reasonable doubt.'"  <u>Id.</u>, Exh. J at 32.  In his direct appeal,
Petitioner devoted 20 pages to alleged discrepancies between
evidence, alleged facts, and the victims' and law enforcement
testimony, under the heading "Weight of Evidence."  <u>Id.</u>, Exh. J
at 33-53.  Petitioner argued that Samantha's testimony, because
it was obtained by coercion, violated his right to due process,
citing to state court opinions from Illinois and New Jersey.
Petitioner alleged that the introduction of some evidence
violated the state's rules of evidence.  Petitioner did not cite
to federal law, the federal constitution, or to any federal
court opinion regarding this claim.

     It is arguable whether Petitioner properly exhausted
this claim in the state courts by fairly presenting it as a
federal due process claim or whether the claim has been

procedurally defaulted.  A petitioner may reformulate his habeas claims somewhat from the state court to the federal court, as long as the substance of his argument remains the same.  See Picard v. Connor, 404 U.S. 270, 277-78, 92 S. Ct. 509, 512-13 (1971).  "However, a petitioner's reformulation of his claim should not place the claim in a significantly different legal posture by making the claim stronger or more substantial." Boyko v. Parke, 259 F.3d 781, 788 (7th Cir. 2001), citing Demarest v. Price, 130 F.3d 922, 932 & 939 (10th Cir. 1997).

A claim is fairly presented to the state courts if the petitioner describes both the operative facts and the federal legal theory on which the claim is based.  See Kelly, 315 F .3d at 1066; Lounsbury v. Thompson, 374 F.3d 785, 788 (9th Cir. 2004) (concluding procedural and substantive due process claims predicated on the defendant's mental competency were sufficiently intertwined to result in the exhaustion of both by the mention of one).  Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim, Picard, 404 U.S. at 277-78, 92 S. Ct. at 513-14, they must do more than present the facts necessary to support the federal claim to the state courts.  Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

An assertion that a verdict is against the "weight of the evidence," as distinguished from a claim that the evidence was legally insufficient, is not cognizable as a basis for federal habeas relief.  See, e.g., Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no

-27-

power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence ...");   Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence ...");   Cameron v. Birkett, 348 F. Supp. 2d 825, 838 (E.D. Mich. 2004).   This is because a verdict against the weight of the evidence is not an error of federal constitutional dimension unless the record is so devoid of evidentiary support that a due process issue is implicated.   See Cukaj v. Warren, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004).   The test for federal habeas relief is not whether the verdict is against the great weight of the evidence, but whether there is sufficient evidence to support the verdict.   See Smith v. Patrick, 508 F.3d 1256, 1259 (9th Cir. 2007), reh'g en banc denied, 2008 WL 509235 (9th Cir. Feb. 27, 2008); Dell v. Straub, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).   A District Court's review on habeas asks only the question of whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which the petitioner was convicted.   See Smith, 508 F.3d at 1259; Cameron, 348 F. Supp. 2d at 838.

The undersigned concludes Petitioner did not exhaust this claim, i.e., a constitutional sufficiency of the evidence due process claim, in the state courts.   Petitioner's single iteration in 20 pages that there was "reasonable doubt" about all of his convictions did not fairly present the factual and legal basis for a federal due process claim regarding the sufficiency of the evidence to the state courts.   General and

-28-

conclusory references to "due process" do not suffice to exhaust a claim that the petitioner's Fourteenth Amendment rights were violated.   See Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006) (holding that "general appeals to broad constitutional principles, such as due process... and the right to a fair trial" do not constitute fair presentation of a federal claim); Castillo, 399 F.3d at 1000-02 (concluding it is not sufficient to engage in "scattershot citation of federal constitutional provisions" without developing "any articulated federal legal theory..."); Galvan v. Alaska Dep't of Corr., 397 F.3d 1198, 1204 (9th Cir. 2005) ("Briefing a case is not like writing a poem, where the message may be conveyed entirely through allusions and connotations....").

However, the Court concludes this claim may also be denied on the merits regardless of any failure to properly exhaust, or "fairly present" the claim.[5]   The Court notes that the standard for evaluating an "actual innocence" claim excusing a petitioner's procedural default is a different standard from that governing a habeas claim of insufficient evidence in violation of the petitioner's right to due process of law, i.e., the existence of reasonable doubt.   See House, 547 U.S. 518, 126

_____

[5] In Petitioner's direct appeal the Arizona Court of Appeals reviewed the record and denied relief on Petitioner's "sufficiency of the evidence" claim.   Answer, Exh. M at 12.   The state court cited to the decisions of the Arizona state courts with regard to the quantum of evidence necessary to satisfy the reasonable doubt standard.   Id. The Court of Appeals stated: "From these inconsistencies, Church argues that the acts did not occur, but the credibility of witness testimony is for the trier of fact. []   Also, there were videotapes that depicted Church's sexual activity with S. plus sufficient other evidence to corroborate the victims' testimony."   Id., Exh. M at 13.

S. Ct. 2064, 2078 (2006); <u>Foster v. Quarterman</u>, 466 F.3d 359, 367 (5th Cir. 2006), <u>cert.</u> <u>denied</u>, 127 S. Ct. 2099 (2007).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970). To determine whether sufficient evidence was introduced at trial to support a habeas petitioner's conviction, the Court must decide if, "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (emphasis in original). <u>See</u> <u>also</u> <u>Smith</u>, 508 F.3d at 1260; <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1276 (9th Cir. 2005).

Under this standard, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not appear affirmatively in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326, 99 S. Ct. at 2793. Petitioner bears the burden of proving that the record is so totally devoid of evidentiary support for the challenged convictions as to violate due process. <u>Id</u>. Circumstantial evidence is sufficient to support a verdict of guilt. <u>Id.</u>, 442 U.S. at 324-25, 99 S. Ct. at 2792; <u>Jones v. Wood</u>, 207 F.3d 557, 563 (9th Cir. 2000) (finding sufficient evidence to support a

murder conviction when the "evidence was almost entirely circumstantial and relatively weak"); Sera v. Norris, 400 F.3d 538, 547 (8th Cir. 2005) ("This case is similar to a host of others in which this Court affirmed convictions based solely on circumstantial evidence despite our recognition that alternate possibilities existed"). Additionally, a petitioner is not entitled to federal habeas relief if the evidence is merely susceptible to an interpretation other than the defendant's guilt. Jackson, 433 U.S. at 326, 99 S. Ct. at 2725; United States v. Beddow, 957 F.2d 1330, 1334 (6th Cir. 1992).[6] See also Bruce v. Terhune, 376 F.3d 950, 959 (9th Cir. 2004) (O'Scannlain, J., concurring).

Three of the victims who testified asserted Petitioner had committed the acts alleged in the indictment, although all of them were uncertain as to the exact dates of the actions. One of the alleged victims, Samantha, denied all allegations

_____

[6]

The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered. [Jackson] at 319 n.13, 99 S. Ct. 2781 ("The question of whether the evidence is constitutionally sufficient is of course wholly unrelated to the question of how rationally the verdict was actually reached.").
The amendments to the habeas corpus statutes set forth in AEDPA have added an additional degree of deference to state courts' resolution of sufficiency of the evidence questions. See Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000) (noting that, if a state court has addressed a sufficiency of the evidence claim, the federal court's review in a habeas proceeding is governed by § 2254(d)).
Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003).

against Petitioner although she testified as to one of allegations against his co-defendant; however, the trial judge stated Samantha was the person who appeared on a videotape engaged in sex acts with a person who was clearly identifiable as Petitioner.   Although the alleged victims' testimony was confused with regard to the actual time of the events alleged and some of the circumstances surrounding the events alleged, i.e., their descriptions of the interior and exterior of the motor home where the acts allegedly occurred and who was present at the time the acts were committed, their testimony was not confused with regard to actual occurrence of the criminal acts. The undersigned notes the case involved testimony by young individuals regarding sexual acts that were charged to have occurred at least eighteen months and in some cases two years prior to the time the victims testified.   The witnesses were thoroughly cross-examined as to the inconsistencies in their testimony, their recollection of events at trial as compared to their prior statements, their motives for testifying, and the degree to which interviews with counselors and law enforcement officers had "helped" them "remember" the alleged events.

        Petitioner's defense to the charges was that the interior of his residence at the time of the alleged events did not match the interior of the residence shown on the videotapes; that it could not be proven when the videotapes were made or where they were made; and that he was not the person shown on the videotapes.   Petitioner argued that an individual engaging in sexual acts on one of the videotapes was not "Samantha," but

-32-

an adult individual with the same name. Petitioner alleged that, because it could not be proven he was in the presence of any victim on the dates alleged, there was insufficient evidence to support the allegations in the indictment.

The videotapes, found in Petitioner's residence, as described by the detective investigating the case who testified at the trial, would be sufficient evidence on which to find Petitioner guilty of the charges asserted. The victim who testified denying the allegations against Petitioner was viewed by the trial judge on a videotape engaged in sexual intercourse with Petitioner. Accordingly, the judge could properly credit the testimony of the other witnesses that the acts did occur and their testimony also supports the verdicts. The record is not so devoid of evidence to support the convictions that the Court may conclude Petitioner was deprived of his right to due process and, therefore, Petitioner may be denied federal habeas relief premised on this claim.

**3. Petitioner asserts his Fourth Amendment rights were violated by the execution of an improper search warrant and by seizure of materials protected by the First Amendment.**

Petitioner alleges he has a First Amendment right to be free of the seizure of material expressing thoughts or ideas, which was violated by the seizure and admission into evidence of materials pursuant to a search warrant.

Petitioner did not properly exhaust any First Amendment claim by raising it in the state courts in a procedurally correct manner, i.e., in his direct appeal. Petitioner has not

shown cause for, nor prejudice arising from his procedural default of this claim. As stated supra, to the extent Petitioner asserts his appellate counsel's ineffective assistance was the cause of his failure to properly exhaust the claim, Petitioner did not exhaust an ineffective assistance of appellate counsel claim in the state courts by asserting it in his first action for post-conviction relief and, accordingly, Petitioner has not established cause for his procedural default of any First Amendment claim.

        Additionally, Petitioner does not have a First Amendment right to the possession of pornographic media depicting actual minors engaged in sex acts and the removal from his possession of such materials pursuant to a search warrant did not violate his constitutional rights. See Ashcroft v. Free Speech Coal., 535 U.S. 234, 240, 122 S. Ct. 1389, 1396 (2002) (holding child pornography is not speech protected by the First Amendment). The Ninth Circuit Court of Appeals has previously stated in a direct appeal of a criminal case tried in the District Court that, even if legally-possessed pornography was removed during the execution of a search warrant, the remedy for the wrong would be return of the legal material not the suppression of the seized evidence. See United States v. Wiegand, 812 F.2d 1239, 1243 (9th Cir. 1987). Additionally, the undersigned acknowledges Petitioner's First Amendment claim may be a confused claim that his Fourth Amendment rights were violated by a search warrant which did not properly restrict the executing officers' discretion to seize material protected by

-34-

the First Amendment, a claim not cognizable on federal habeas relief.  See Abell v. Raines, 640 F.2d 1085, 1087 (9th Cir. 1981).

Petitioner is precluded from federal habeas relief on the basis of any alleged violation of the Fourth Amendment. Petitioner's Fourth Amendment claim is not cognizable in an action for federal habeas relief because he had the opportunity to litigate this claim in the state courts.  See Stone v. Powell, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976).  A claim that the petitioner's Fourth Amendment rights were violated does not provide a basis for granting federal habeas relief from a state conviction if the petitioner had the opportunity "for full and fair litigation" of the claim in the state courts.  See, e.g., Woolery v. Arave, 8 F.3d 1325, 1326-27 (9th Cir. 1993) (concluding that, unless the habeas petitioner made an affirmative showing that the state denied him a full and fair opportunity to litigate his Fourth Amendment claim, Stone requires dismissal of the claim); Patterson v. Runnels, 288 F. Supp. 2d 1092, 1097-98 (C.D. Cal. 2003).  The relevant inquiry is whether the petitioner was afforded a full and fair hearing of his claim in the state court, not whether the state court reached a correct decision regarding the legitimacy of the "search." See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."); Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994) (noting that a

-35-

habeas petitioner's Fourth Amendment "argument goes not to the fullness and fairness of his opportunity to litigate the claim, but to the correctness of the state court resolution, an issue which <u>Stone v. Powell</u> makes irrelevant"). Therefore, habeas relief may be denied on the merits of this claim for relief regardless of any failure to properly exhaust the claim.

**4.   Petitioner alleges the indictment was unconstitutionally vague.**

Petitioner contends the charges alleged in the indictment were not specific enough to allow him to adequately present a defense. Petitioner raised this claim in his direct appeal. The Arizona courts concluded Petitioner had waived this claim because he did not object to the indictment prior to trial, as required by Rule 16.1, Arizona Rules of Criminal Procedure.[7] The state court then concluded any error regarding the specificity of the indictment did not constitute fundamental error warranting reversal of the convictions. Answer, Exh. M at 5-6.

Respondents assert Petitioner did not properly exhaust this claim. Respondents contend the state court's "alternative" rejection of the claim on the merits did not vitiate the court's finding of a procedural bar to granting relief on the claim.

---

[7] Rule 16.1(c), Arizona Rules of Criminal Procedure, as it is currently written, provides: "Any motion, defense, objection, or request not timely raised under Rule 16.1(b) shall be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it."

1    A state court's discussion of the merits of a habeas

2  claim does not negate the petitioner's procedural default of the

3  habeas claim in the state courts.  <u>See</u>, <u>e.g.</u>, <u>Comer v. Schriro</u>,

4  480 F.3d 960, 964 & n.6 (9th Cir. 2007) ("A state court,

5  however, does not vitiate a procedural bar ruling by addressing

6  the merits of a claim in the alternative.").   However, it is

7  arguable that this claim was procedurally barred for purposes of

8  habeas review because the state court concluded the claim was

9  only procedurally barred absent fundamental error; it implicitly

10  addressed the merits of the claim by concluding there was no

11  fundamental error and, accordingly, that the claim was

12  precluded.[8]  Nonetheless, regardless of any procedural default

13  of the claim the claim may be denied on the merits.

14

15

16          [8] The Arizona Rules of Criminal Procedure provide that a
    grand jury indictment may be amended with regard to facts.  <u>See</u> Ariz.
17  R. Crim. P. 15(b) ("The charge may be amended only to correct mistakes
    of fact or remedy formal or technical defects, unless the defendant
18  consents to the amendment. The charging document shall be deemed
    amended to conform to the evidence adduced at any court proceeding.").
19          A technical or formal defect in an indictment
              may be remedied by amendment. A defect is
20            technical or formal if it does not change the
              nature of the offense charged or prejudice the
21            defendant in any way. [] An error as to the date
              of the offense alleged in the indictment does not
22            change the nature of the offense, and therefore
              may be remedied by amendment. [] When the
23            amendment results in no change in the underlying
              offense or actual prejudice to the defendant, the
24            indictment is automatically deemed amended to
              conform to the evidence adduced at trial.
25  <u>See</u> <u>Arizona v. Jones</u>, 188 Ariz. 534, 544, 937 P.2d 1182, 1192 (Ct.
    App. 1996) (internal citations omitted). Rule 13.5(e), Arizona Rules
26  of Criminal Procedure, requires an objection to the specificity or
    amendment of an indictment be made at least twenty days prior to
27  trial, in accordance with Rule 16.1.

28                                     -37-

The Sixth Amendment, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees a criminal defendant the fundamental right to be clearly informed of the nature and cause of the charges against him. See U.S. Const. amend. VI; Jackson, 443 U.S. at 314, 99 S. Ct. at 2786 ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."); Sheppard v. Rees, 909 F.2d 1234, 1236 (9th Cir. 1990); Gray v. Raines, 662 F.2d 569, 571 (9th Cir. 1981). This principle rests on the premise that a person may not be deprived of their liberty without notice and a meaningful opportunity to defend against the charges brought against them. See Cole v. Arkansas, 333 U.S. 196, 201, 68 S. Ct. 514, 517 (1948); Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999).[9]

Although the "constructive amendment" of a state criminal indictment is not proper, a "variance" between the facts charged in an indictment and the facts proved at a state criminal trial does not violate the defendant's federal constitutional rights, provided any variance is not prejudicial to the adjudication of the defendant's guilt of the substantive crime.

> Save at either end of the spectrum, it is far from clear what distinguishes a permissible variance (as between facts charged and facts proved) from an impermissible constructive amendment. See United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985) ("considerable

_____

[9] Petitioner does not have a Fifth Amendment due process right regarding the sufficiency of the indictment. See, e.g., Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999).

-38-

confusion") []; <u>Hunter v. New Mexico</u>, 916
F.2d 595, 599 (10th Cir. 1990) ("shadowy at
best") []. Some courts, including our own,
have suggested that at least where the issue
is confined to factual deviations, the
question turns importantly on whether the
defendant has been prejudicially misled. []

<u>Haines v. Risley</u>, 412 F.3d 285, 291 (1st Cir. 2005).  However,

the fact of a variance between an indictment and the proof

presented at a state criminal trial does not require reversal of

the conviction upon federal habeas review unless it actually

affected the substantial rights of the defendant.  <u>See</u> <u>Jones v.</u>

<u>Smith</u>, 231 F.3d 1227, 1238-39 (9th Cir. 2000); <u>Schriro v.</u>

<u>Farwell</u>, 225 Fed. App. 591, 592-93 (9th Cir. 2007).

       The indictment differed with regard to the proof

adduced at trial only with regard to the confusion in the

victims' testimony with regard to what exact year the events

alleged took place.  This variance does not require reversal of

Petitioner's convictions because the variance did not affect his

substantial rights, i.e., the evidence did not establish the

crimes did not occur within the time frames alleged in the

indictment with regard to the statutory age of each victim,

i.e., that they were under the age of fifteen or thirteen when

the acts occurred, nor did any variance establish the crimes did

not occur.  <u>Compare</u> <u>United States v. Tsinhnahijinnie</u>, 112 F.3d

988, 990-92 (9th Cir. 1997) (applying the federal rules in a

direct appeal and finding a fatal variance where the indictment

charged the defendant with sexual abuse of a child occurring on

an Indian reservation during summer of 1992, but the proof also

supported a showing of abuse of the child off the reservation in

-39-

1994).   Additionally, Petitioner's ability to assert a defense
to the evidence that would be presented at trial, based on the
indictment, was not affected by any alleged variance in the
indictment  and  the  proof  adduced  at  trial.     Accordingly,
Petitioner's substantive rights were not violated.   See United
States  v.  Antonakeas,  255  F.3d  714,  722  (9th  Cir.  2001).
Compare  Casey v. Moore, 386 F.3d 896, 913 (9th Cir. 2004).

          The federal courts which have considered claims similar
to those raised by Petitioner have concluded that the lack of
specificity in an indictment with regard to the dates of alleged
crimes  of  child  abuse  did  not  violate  the  petitioner's  Sixth
Amendment rights to an indictment which provided adequate notice
and an opportunity to defend.   See Brodit v. Cambra, 350 F.3d
985, 988-89 (9th Cir. 2003); Valentine v. Konteh, 395 F.3d 626,
632  (6th  Cir.  2005)  (collecting  published  and  unpublished
opinions so holding); Fawcett v. Bablitch, 962 F.2d 617, 618-19
(7th Cir. 1992) (finding no constitutional violation where the
indictment charged a crime occurred within a time-span of six
months; Hunter v. New Mexico, 916 F.2d 595, 600 (10th Cir.
1990) (referencing a charging document alleging a crime had
occurred within a three-year time span).   Accordingly, federal
habeas relief on the merits of this claim may be denied.   See
Haines, 412 F.3d at 291.

**5. Petitioner avers he was deprived of his right to due process of law because the judge was biased, made bad trial rulings, and assisted one of the victims with regard to her testimony.**

Regardless of any failure to properly exhaust this claim in the state courts, this claim may be denied on the merits of the claim.

The Due Process Clause of the United States Constitution guarantees a criminal defendant the right to a fair and impartial judge. See, e.g., In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 625 (1955). However, to succeed on a claim of judicial bias a federal habeas petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 1464 (1975).

Federal habeas relief on a claim that a state trial judge was so prejudiced as to violate the petitioner's federal constitutional right to due process requires the petitioner to establish the state trial judge's behavior rendered his trial fundamentally unfair. See, e.g., Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995); Gayle v. Scully, 779 F.2d 802, 806 (2d Cir. 1985); McBee v. Grant, 763 F.2d 811, 818 (6th Cir. 1985). The petitioner must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. See United States v. Lowe, 106 F.3d 1498, 1504 (10th Cir. 1997). Adverse rulings by a trial judge are not themselves sufficient to establish their bias or prejudice. See, e.g., Wallace v.

-41-

Bell, 387 F. Supp. 2d 728, 737 (E.D. Mich. 2005).

Petitioner presents no evidence of actual bias. See Crater v. Galaza, 491 F.3d 1119, 1131-32 (9th Cir. 2007) (noting the judge had not made "highly personal aspersions" at the defendant nor had the judge displayed open hostility or bias at the beginning of the proceeding); Duckett, 67 F.3d at 740. The judge presiding over Petitioner's criminal trial had no direct, personal, or substantial interest in seeing him convicted of any of the crimes charged and, accordingly, there is no evidence of actual bias. See Paradis v. Arave, 20 F.3d 950, 958 (9th Cir. 1994) ("[D]efendants are entitled to a judge who has no direct personal interest in the outcome of a proceeding.").

Nor is there any evidence of the appearance of bias. See, e.g., Taylor v. Hayes, 418 U.S. 488, 501, 94 S. Ct. 2697, 2704-05 (1974) ("the inquiry must be not only whether there was actual bias on [the judge's] part, but also whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused"). United States Supreme Court precedent reveals only three circumstances in which the appearance of judicial bias violated a litigant's right to due process of law. See Crater, 491 F.3d at 1131-32. Due process requires recusal of a judge who has a direct, personal, substantial pecuniary interest in reaching a conclusion against one of the litigants. Id. A litigant's right to due process is also violated if a trial judge becomes "embroiled in a running, bitter controversy" with one of the

-42-

litigants.  <u>Mayberry v. Pennsylvania</u>, 400 U.S. 455, 465, 91 S.
Ct. 499, 505 (1971).  Due process is also violated if the judge
acts as "part of the accusatory process."  <u>In re Murchison</u>, 349
U.S. at 137, 75 S. Ct. at 626.

        Petitioner has not established that the trial judge had
a direct interest in his criminal proceedings, or that he was
embroiled in a "bitter controversy" with Petitioner, or that the
judge acted as part of the "accusatory process."  After
reviewing the trial transcript provided to the undersigned, the
undersigned concludes the trial court's interaction with the
victim witnesses did not constitute the judge becoming "part of
the accusatory process," but is more properly characterized as
the judge's clarification of testimony.  Accordingly, because
Petitioner has not established actual bias or the appearance of
bias, Petitioner is not entitled to federal habeas relief on the
merits of this claim.  <u>See Jeffers v. Ricketts</u>, 832 F.2d 476,
482 (9th Cir. 1987) (stating that habeas relief is available
only when petitioner demonstrates unfair treatment due to
judicial bias), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 497 U.S. 764 (1990);
<u>Loritz v. Terhune</u>, 60 Fed. App. 1, 2-3 (9th Cir. 2002); <u>Mann v.
Thalacker</u>, 246 F.3d 1092, 1097 (8th Cir. 2001).

        **6. Petitioner contends he was deprived of his right to
due process because the victims' testimony was unreliable.**

        In his federal habeas petition Petitioner asserts his
counsel failed to object to "taint or suggestibility" with
regard to the victims' trial testimony.  Petitioner also
indicates contradictions in the dates of the alleged crimes

-43-

offered by the victim witnesses.  Petitioner notes each victim testified that she remembered what she was helped to remember. Petitioner asserts his convictions based on this unreliable and contradictory testimony violated his federal right to due process of law.

In his first action for post-conviction relief Petitioner asserted his conviction was predicated on perjured testimony, and the detective's tainted identification of him as the person on the videotapes, and tainted courtroom identifications of him by the victims.  Petitioner also alleged the detective who testified as to the contents of a videotape, which could not be viewed by the bench because the condition of the videotape had deteriorated to a point beyond which it could be played, was perjured, i.e., that the detective testified Petitioner was the individual on the tape when the detective knew Petitioner was not that individual.  See Answer, Exh. U at 8.[10]   Additionally, in his first action for post-conviction relief Petitioner asserted the prosecution did not present exculpatory evidence to the grand jury because it did not "disclose" that victim witnesses' testimony was contradicted by the testimony of other victim witnesses.

Petitioner arguably exhausted this claim.   However, Petitioner's claim that his right to due process was violated

---

[10] An investigator testified that the videotape (item 20A in Exhibit 7) depicted Petitioner's co-defendant and Samantha, and that Petitioner's voice can be heard directing them.  Answer, Exh. D at 7-8 & 10-11.  The investigator testified she recognized Petitioner's voice on the tape from her interview with Petitioner and from other videotapes.  Id. at 8.

-44-

because the witnesses' testimony was tainted or unreliable is only cognizable on federal habeas review if construed as a sufficiency of the evidence claim.[11]  And, when so construed, the claim fails on the merits.

It is not the province of the federal habeas court to re-weigh the evidence or re-determine the credibility of witnesses whose demeanor has been observed by the finder of fact.  See, e.g., Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 850-51 (1983) (stating "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); McCullough v. Filion, 378 F. Supp. 2d 241, 253 (W.D.N.Y. 2005).  An assessment of the credibility of witnesses is beyond the scope of federal habeas review in the context of a sufficiency of the evidence claim.  Gall v. Parker, 231 F.3d 265, 286 (6th Cir. 2000).  A federal court must presume that the factfinder's determination of the credibility of witnesses was correct and the habeas court may ignore the testimony of witnesses found credible by the state trial

---

[11] Although there is a scarcity of published opinions on point, claims by a state habeas defendant in a case alleging child molestation wherein the defendant challenges the reliability or "tainted" nature of the victim's trial testimony are regularly construed by the federal District Courts as stating claims which should be analyzed under the sufficiency of the evidence standard stated in Jackson v. Virginia.  The majority of the cases are unpublished and from other District Courts and are, therefore, of no precedential value, however, the undersigned agrees with the reasoning stated therein with regard to this issue.  See, e.g., Lucas v. McBride, 505 F. Supp. 2d 329, 358 (N.D. W. Va. 2007); Pollard v. Cain, 2007 WL 4299991, at *13 (W.D. La. 2007); Grooms v. Washington, 2007 WL 2225803, at *12-*13 (N.D. Ga. 2007).

factfinder only if the testimony was "inherently incredible." <u>Malcum v. Burt</u>, 276 F. Supp. 2d 664, 686 (E.D. Mich. 2003). <u>See also</u> <u>United States v. Bailey</u>, 444 U.S. 394, 414-15, 100 S. Ct. 624, 636-37 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story"). A federal habeas court must not "focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. 390, 402, 113 S. Ct. 853, 861 (1993). When undertaking this analysis, the reviewing court is not authorized to substitute its interpretation of the evidence for that of the factfinder. <u>See</u> <u>Nance v. Norris</u>, 392 F.3d 284, 289 (8th Cir. 2004); <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985).

To the extent Petitioner asserts the testifying investigative officer gave perjured testimony, the claim must fail because Petitioner presents no evidence other than his bald and self-serving assertion that the prosecution presented perjured testimony. <u>See</u> <u>Pina v. Cambra</u>, 171 Fed. App. 674, 675 (9th Cir. 2006); <u>Malcum</u>, 276 F. Supp. 2d at 684 ("Mere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor[] Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury.[]").[12]   Additionally,

---

[12]
The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of

during Petitioner's trial his counsel adequately argued Petitioner's claims regarding contradictions in testimony and evidence to the factfinder and Petitioner does not provide any evidence that material evidence was withheld by the prosecution. Accordingly, Petitioner has not stated a claim for federal habeas relief with regard to this claim and the claim may be denied.  See Jackson v. Brown, 513 F.3d 1057, 1171-77 (9th Cir. 2008).

**7.  Petitioner alleges he was deprived of his constitutional right to confront witnesses against him.**

Petitioner contends his Sixth Amendment right to confrontation was violated because a police detective testified regarding the contents of a videotape found in Petitioner's residence pursuant to a search warrant, which videotape had, while in police custody, deteriorated to a point where the tape

---

justice. Giglio v. United States, 405 U.S. 150, 153, 92 S. Ct. 763, [] (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, [] (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. [] However, a habeas petitioner must show that a witness' statement was "indisputably false", rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. [] A habeas petitioner has the burden of establishing a Giglio violation. []
Malcum v. Burt, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(some internal citations omitted).

could not be viewed by the bench.  Petitioner asserts this made it impossible to refute the detective's testimony that the acts depicted on the videotape constituted sexual exploitation of a minor.  Petitioner's counsel vigorously cross-examined the detective with regard to his identification of Petitioner as the person in the videotape and, accordingly, Petitioner's right to confront witnesses was not violated with regard to this witness and this testimony.  See <u>Crawford v. Washington</u>, 541 U.S. 36, 39, 124 S. Ct. 1354, 1357 (2004).

**8. Petitioner asserts he was denied his right to due process of law because the burden of proof was improperly shifted to the defendant.**

Petitioner alleges the prosecution's Exhibit 5 was a videotape depicting women who were fully developed and that the prosecution did not present evidence of the age of the women depicted on this videotape.  <u>See</u> Petition at 5.  Petitioner asserts the prosecution did not establish that the girl on one of the videotapes was "Samantha," the minor who testified at his trial, and asserts this person was an adult also named Samantha. <u>Id.</u>  Petitioner asserts a "third video" "alleges a girl who is not charged and not present for cross examination." <u>Id.</u> Petitioner notes that, during his trial when his counsel raised the issue that the prosecution had not presented any evidence of the identity or the age of an individual depicted on one of the videotapes, the prosecutor stated she was not required to prove the identity of the individual and that the defense could call an expert witness to establish the victim was not under the age

of fifteen.  Petitioner contends that the burden of dis-proving an element of some of the crimes charged was improperly shifted to the defense, in violation of his right to due process. Petitioner asserts he raised this issue in his direct appeal and in his first action for post-conviction relief.

As discussed supra, the Due Process Clause requires proof beyond a reasonable doubt of every fact necessary to constitute the crime of conviction.  In re Winship, 397 U.S. at 364, 90 S. Ct. at 1072-1073.  The United States Supreme Court has also established that the federal constitutional right to due process of law prohibits a state from shifting the burden of proof to a criminal defendant on an issue if that issue negatives any element of the offense.  See Patterson v. New York, 432 U.S. 197, 206, 97 S. Ct. 2319, 2325 (1977); Mullaney v. Wilbur, 421 U.S. 684, 703-04, 95 S. Ct. 1881, 1892 (1975).

A writ of habeas corpus based a "burden shifting" claim may be issued only where the prosecution's burden of proof was actually impermissibly reallocated or reduced.  See, e.g., Mullaney, 421 U.S. at 701, 95 S. Ct. at 1890-91.  "If this were not the rule, almost every nuance of state law could be fashioned into a Winship problem, thereby transforming federal habeas courts into super-appellate state courts.  Both Congress and the Supreme Court prohibit such a role for federal habeas courts."  Ponnapula v. Spitzer, 297 F.3d 172, 182-83 (2d Cir. 2002).

Petitioner was tried before a judge, and there is no evidence that the prosecutor's comments persuaded the judge to

-49-

ignore the allocation or amount of the burden of proof with regard to each element of the crimes of conviction in violation of Petitioner's right to due process.   The prosecutor's comments, alone, did not impermissibly shift the burden of proof to the defense and did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974).  Because Petitioner was tried before the bench, a showing of prejudice with regard to a due process violation is more difficult.  See Keyes Fibre Co. v. Packaging Corp. of Am., 763 F. Supp. 374, 376 (N.D. Ill. 1991).  A trial judge acting as the finder of fact is presumed to have knowledge of the law and to rely only upon the actual admissible evidence presented at trial in rendering a verdict.  See United States v. Shukri, 207 F.3d 412, 419 (7th Cir. 2000) (holding a reviewing court presumes that a bench court was not influenced by improper evidence); United States v. Foley, 871 F.2d 235, 240 (1st Cir. 1989); United States v. Joseph, 781 F.2d 549, 552 (6th Cir. 1986); United States ex rel. Placek v. Illinois, 546 F.2d 1298, 1304 (7th Cir. 1976); Clark v. McLemore, 291 F. Supp. 2d 535, 546 (E.D. Mich. 2003).

Petitioner has not stated a properly supported federal habeas claim that the burden of proof was somehow wrongfully shifted to the defense in violation of his federal constitutional rights.  See Montana v. Egelhoff, 518 U.S. 37, 54, 116 S. Ct. 2013, 2022 (1996).  To establish a due process violation in this regard Petitioner would have to establish that

the burden of proof applied to the charges against him was something other than beyond a reasonable doubt. <u>See</u> <u>In re Winship</u>, 397 U.S. at 364, 90 S. Ct. at 1072-73; <u>Sarausad v. Porter</u>, 503 F.3d 822, 829 (9th Cir. 2007), <u>petition</u> <u>for</u> <u>cert. filed</u>, 76 U.S.L.W. 3324 (Dec. 7, 2007).  Petitioner has not made such a showing.

However, the Court notes Petitioner has raised an issue with regard to whether there was enough evidence to convict Petitioner of the crimes which did not specify the name of the victim, i.e., Counts 16, 17, 18, 19, and 20 of the indictment. As compared to the other counts, to which the victims testified as to their age at the time the acts occurred, there was no testimonial evidence introduced at trial with regard to the age of the victims in these counts to the extent any of the visual depictions did not involve Samantha.

The Court acknowledges there was a paucity of evidence introduced at trial regarding the age of the two Jane Does appearing on one of the videotapes related to Counts 16, 17, 18, 19, and 20, i.e., the females described by the investigator as "Michelle" and another girl.  However, the trial court viewed the tape and was convinced that the persons on the tape were under the age of 15 years old.  The Court concludes this finding of fact was soundly within the purview of the factfinder and should not be second-guessed in the context of a habeas action.

In the context of the limits of a search warrant with regard to First Amendment rights, another District Court has stated:

The fact that some adults look like minors and some minors look like adults does not mean a warrant is overbroad. Most minors look like minors and most adults look like adults, and most of the time most law enforcement officers can tell the difference. The Constitution requires no greater precision.

DePugh v. Penning, 888 F. Supp. 959, 990 n.18 (N.D. Iowa 1995).

The Court further notes that, throughout his post-conviction and federal habeas pleadings, Petitioner's defense to what he refers to as the "Michelle" counts, without being more specific, is premised on the fact that this unidentified person, a neighborhood child known to the victims and Petitioner, had moved to Idaho in August of 2001, which he asserts makes it factually impossible for the video to have been created as alleged. However, the counts of the indictment which could be construed as the "Michelle" counts are alleged to have occurred before July of 2001, during which time Petitioner himself states "Michelle" lived in Arizona.

As noted *supra*, the proper standard for assessing whether there was sufficient evidence to satisfy constitutional standards is that stated in Jackson, i.e., whether any rational trier of fact could have found enough evidence to support conviction. See Smith, 508 F.2d at 1259-61. The trier of fact in this matter viewed the relevant videotape and apparently concluded the individuals depicted in the tape were two different minor females under the age of fifteen. It is not the province of this federal habeas court to say the record is totally devoid of evidence to support Petitioner's conviction on these counts.

**9. Petitioner maintains his right to due process and a fair trial was violated by the introduction of uncharged acts.**

In his ninth claim for relief in his habeas petition, Petitioner alleges the grand jury indicted him for specific acts in Counts 4, 9, 16, 18, and 20, which differed from the specific acts he was found guilty of with regard to Counts 4, 9, 16, 18, 20. Petitioner asserts his rights to a fair trial and due process pursuant to the Sixth and Fourteenth Amendments were violated in this regard.

Respondents contend:

> Petitioner asserts that on Counts 4, 9, 16, 18 and 20 he was convicted for acts not charged in the indictment, thereby violating his Sixth and Fourteenth Amendment rights to only be convicted for the crimes charged. Petitioner presented no such claim to the state courts. In his supplemental petition for postconviction relief, Petitioner alleged that he was convicted on charges not alleged in the indictment in violation of "fundamental principles of due process," citing to an Illinois appellate court decision. (Exhibit U, at 16-17.) However, Petitioner never mentioned the Sixth or Fourteenth Amendments, or any other provision of the federal constitution. [] Thus, he failed to fairly present a federal claim. <u>See Baldwin</u>, 541 U.S. at 29; Fields, 401 F.3d at 1021; <u>Lyons</u>, 232 F.3d at 668.
> Moreover, the trial court found the claim precluded because Petitioner failed to raise it on direct appeal. (Exhibit W, at 1-2.) For either (or both) of these reasons, the claim is procedurally defaulted and barred from federal review. <u>See</u> <u>Beaty</u>, 303 F.3d at 987; <u>Carriger</u>, 971 F.2d at 333.

Answer at 27.

Petitioner did not fairly present this federal habeas claim to the state courts in a procedurally correct manner. <u>See</u>

Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 276 (1982); Castillo, 399 F.3d at 999;[13] Peterson v. Lampert, 319 F.3d 1153, 1157 (9th Cir. 2003); Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000); Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996) (concluding the petitioner must present the same legal theory, not just the same facts, to exhaust a claim). Cf. Tigner v. Cockrell, 264 F.3d 521, 526-27 (5th Cir. 2001) (finding a federal habeas claim had not been fairly presented when the petitioner had objected to expert witness testimony on evidentiary grounds, not on constitutional grounds).

Petitioner has procedurally defaulted this claim by not fairly presenting it to the state courts in a procedurally correct manner. Petitioner has not shown cause nor prejudice regarding his procedural default of his claim. Because Petitioner has not established cause and prejudice regarding his procedural default of this due process claim, the Court may not

---

[13] In Castillo, the Ninth Circuit stated:
... we have held that citation to either a federal or state case involving the legal standard for a federal constitutional violation is sufficient to establish exhaustion. []; Peterson v. Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a citation to a state case analyzing a federal constitutional issue serves the same purpose as a citation to a federal case analyzing such an issue."). ...
 Mere general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish exhaustion. [] Nor is it enough to raise a state claim that is analogous or closely similar to a federal claim.
399 F.3d at 999 (internal citations and quotations omitted and emphasis added).

grant relief on the merits of the claim. See, e.g., Bargas v. Burns, 179 F.3d 1207, 1215 (9th Cir. 1999); Beard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1999) ("The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal petition.").

**10. Petitioner avers his right to due process was violated because his counsel allowed him to appear during his bench trial in prison clothing and shackles.**

Respondents assert this claim was not properly exhausted in the state courts and that Petitioner has not shown cause for nor prejudice arising from his procedural default of this claim. Respondents argue Petitioner has not made the requisite showing of a constitutional violation and actual innocence which would allow the Court to excuse his procedural default and consider the merits of this claim, absent his showing of cause and prejudice, under the "fundamental miscarriage of justice" standard.[14]

Petitioner did not properly exhaust this claim in the state courts and he has not shown cause for, nor prejudice arising from, his default of this claim. Additionally, the claim may be denied on the merits.

---

[14] The Supreme Court has recognized that any "actual innocence" exception to a procedural bar to consideration of federal habeas claims is concerned with actual, as opposed to legal, innocence. See Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998); Schlup, 513 U.S. at 324, 115 S. Ct. at 865. A finding that a petitioner has presented sufficient evidence of his "actual innocence" must be based on newly presented, reliable evidence. See Schlup, 513 U.S. at 324-25, 866.

-55-

Although the United States Supreme Court has determined that a defendant's federal rights may be violated when a jury is allowed to view them in shackles or other restraints, there is no United States Supreme Court precedent which applies this conclusion to bench trials. The federal Circuit Courts of Appeal which have addressed the issue have not been inclined to extend the holding regarding the prejudicial impact of prison garb on a jury to a situation involving a judge as the fact-finder. Cf. United States v. Zuber, 118 F.3d 101, 102 (2d Cir. 1997) ("the rule that courts may not permit a party to a jury trial to appear in court in physical restraints without first conducting an independent evaluation of the need for these restraints does not apply in the context of a non-jury sentencing hearing."). In a recent decision involving a direct appeal of a District Court conviction the Ninth Circuit Court of Appeals stated that it "has not decided whether a general policy of shackling a defendant for a proceeding in front of a judge violates due process." United States v. Howard, 480 F.3d 1005, 1012 (9th Cir. 2007) ("Nearly all of the litigation concerning shackled defendants arises in the context of proceedings in front of a jury."). Accordingly, there is no Supreme Court precedent regarding the shackling of a defendant before a judge only and, absent such precedent, habeas relief on the claim may not be granted.

All of the federal cases which discuss habeas relief based on a shackling claim state that, to succeed on this type of claim, the petitioner must show that the physical restraints

-56-

"had substantial and injurious effect or influence in determining the *jury's* verdict..." Rhoden v. Rowland, 172 F.3d 633, 636 (9th Cir. 1999) (emphasis added); see also Holbrook v. Flynn, 475 U.S. 560, 568-69, 106 S. Ct. 1340, 1345 (1986). The Court must conclude the defendant was indeed physically restrained in the presence of a jury and that a jury saw or was aware of the restraint and that the physical restraint was not justified by state interests. See Ghent v. Woodford, 279 F.3d 1121, 1132 (9th Cir. 2002). Additionally, for unjustified restraint to rise to the level of a constitutional trial error, the petitioner must make a showing that he suffered prejudice as a result of the shackling. See id.; Gonzalez, 341 F.3d at 903. See also Dyas v. Poole, 317 F.3d 934, 936-37 (9th Cir. 2003). Any showing of prejudice would be more difficult if there were no jury, but only a judge who is presumed to be less influenced by such restraints. See Howard, 480 F.3d at 1012 ("In the present case, however, fear of prejudice is not at issue, as a judge in a pretrial hearing presumably will not be prejudiced by seeing defendants in shackles."); Zuber, 118 F.3d at 104 ("We traditionally assume that judges, unlike juries, are not prejudiced by impermissible factors.").

Petitioner does not assert that the fact-finder, i.e., the bench, was prejudiced as a result of his appearing in prison garb, including shackles and hand-cuffs. Petitioner asserts that appearing in this fashion was prejudicial with regard to the witnesses, and alleges that the victims identified him as the person who had assaulted them because he was in prison garb.

The Court is unable to locate any United States Supreme Court opinion extending the principle of the prejudicial effect of shackles upon a jury to trial witnesses.   Petitioner was not tried before a jury and, accordingly, the conclusion that a jury was prejudiced to find him guilty because he appeared in the courtroom in prison garb is not available as a means of habeas relief.

**11.  Petitioner  contends  he  was  denied  his  Sixth Amendment right to a jury trial during the sentencing phase of his criminal proceedings.**

Petitioner alleges he was sentenced to an aggravated term of imprisonment with regard to each count of conviction. Petitioner contends that being sentenced based on aggravating factors found by a judge and not a jury violated his rights pursuant to the United States Supreme Court's holding in <u>Blakely v. Washington</u>.

Petitioner raised a <u>Blakely</u> claim in his second state action for post-conviction relief.   The Arizona court found the claim precluded as waived by Petitioner's failure to raise this issue in his first action for post-conviction relief.   The state court also noted Petitioner had waived not only a jury trial, but all rights flowing from a jury trial, including the finding of facts relevant to his sentencing by a jury.

Petitioner's convictions and sentences became final in October of 2004, when the Arizona Supreme Court denied relief in his direct appeal, after the date that <u>Blakely</u> was decided in June of 2004.   Although Petitioner filed his notice of post-

conviction relief before the date his direct appeal became final and before <u>Blakely</u> was issued, he filed his actual brief stating his claims for post-conviction relief after the date <u>Blakely</u> was decided.    Accordingly,  any  <u>Blakely</u>  claim  was  available  to Petitioner at the time he filed his brief asserting his claims for post-conviction relief and the state court did not err in determining  that  the  claim  was  precluded  as  waived  by Petitioner's failure to raise the claim in his first action for post-conviction relief.

**12. Petitioner asserts his sentences violate his Eighth Amendment right to be free of cruel and unusual punishment.**

Petitioner raised this issue in his action for post-conviction relief and the state court determined the claim was precluded as waived by his failure to raise the issue in his direct  appeal.    Petitioner  has  not  shown  cause  for,  nor prejudice arising from his procedural default of this claim. Additionally, habeas relief may be denied on the merits of the claim.

The Eighth Amendment to the United States Constitution proscribes  the  infliction  of  "cruel  and  unusual  punishments." U.S. Const. amend. VIII.   In <u>Ewing v. California</u>, 538 U.S. 11, 123 S. Ct. 1179 (2003), the Supreme Court explained that while the constitutional principle of proportionality between crime and sentence applies to noncapital sentences, "[t]he Eighth Amendment does not require strict proportionality.... Rather, it forbids    only    extreme    sentences    that    are    'grossly disproportionate' to the crime."   538 U.S. at 23, 123 S. Ct. at

1886 (citation omitted).   The <u>Ewing</u> decision rejected the defendant's claim that a sentence of 25 years to life for felony grand theft of golf clubs was "grossly disproportionate" to the crime where the defendant had previously been convicted of three residential burglaries and a robbery.   538 U.S. at 18, 30-31, 123 S. Ct. at 1189-90.   Although Petitioner did not have prior convictions, Petitioner's sentence was not grossly disproportionate to the number and types of crimes of which he was convicted.   <u>See</u> <u>Rios v. Garcia</u>, 390 F.3d 1082, 1085-86 (9th Cir. 2004).   <u>Cf.</u> <u>Clark v. Lamarque</u>, 82 Fed. App. 522, 524 (9th Cir. 2003) ("Clark's sentence of twenty-six years to life for felony indecent exposure was not a grossly disproportionate sentence for a registered sex offender who had been convicted of five previous sexual offenses, including two felony convictions for child molestation).

**13.   Petitioner contends his "Sixth Amendment due process guarantee of access to the courts" was violated.**

Petitioner asserts his right to be represented by counsel and by himself was violated because the trial court did not allow him to file *pro se* motions.   Petitioner alleges the state trial court "lost" his motion to continue and his motion for a rehearing.   Petitioner further alleges that the Arizona Department of Corrections has destroyed his legal documents since his incarceration on the charges challenged in this habeas action.

Petitioner did not assert this federal habeas claim in the Arizona state courts.   Petitioner did not properly exhaust

this claim in the state courts and he has not shown cause for, nor prejudice arising from, his default of this claim. Accordingly, habeas relief may not be awarded on the merits of the claim.

Additionally, the claim may be denied on the merits because Petitioner does not have a federal constitutional right to be represented by counsel and to simultaneous self-representation in the fashion he asserts. See Pizzuto v. Arave, 280 F.3d 949, 968 (9th Cir. 2002). Cf. McKaskle v. Wiggins, 465 U.S. 168, 174, 104 S. Ct. 944, 949 (1984) (discussing the inherent conflict between the right to self-representation and the right to the effective assistance of counsel); Clark v. Perez, 510 F.3d 382, 395 (2d Cir. 2008); Simpson v. Battaglia, 458 F.3d 585, 597 (7th Cir. 2006) ("The Faretta right and the appointment of standby counsel inherently conflict which, taking into account that hybrid representation is not required, [] supports the conclusion that there is no right to standby counsel"). See also United States v. Olano, 62 F.3d 1180, 1193 (9th Cir. 1995) (concluding in the context of a direct appeal that the District Court could allow hybrid representation), quoting United States v. Kienenberger, 13 F.3d 1354, 1356 (9th Cir. 1994) ("'defendant does not have a constitutional right to "hybrid" representation' at trial. He or she therefore has no absolute right to serve as co-counsel after electing to be represented by an attorney.").

Petitioner had a "Faretta" right to self-representation, without undue interference from appointed

advisory counsel, which right he did not exercise. See Gamble
v. Secretary, Florida Dep't of Corr., 450 F.3d 1245, 1249 (11th
Cir. 2006). Petitioner also had a right to the effective
assistance of counsel, which was not violated by the trial
court's preclusion of Petitioner's filing of *pro se* motions.
See Washington v. Renico, 455 F.3d 722, 734 (6th Cir. 2006).
Compare Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000).
Nor was this right violated by any refusal of counsel to file
motions if he did not believe the motions to have merit. See
Stenson, 504 F.3d at 889-90. Furthermore, a state prisoner is
arguably not entitled to federal habeas relief predicated on a
claim that he has been denied access to legal materials when he
represents himself in post-conviction proceedings. Cf. Kane,
546 U.S. at 10, 126 S. Ct. at 408 (reversing a decision of the
appellate court concluding the petitioner was entitled to relief
pursuant to Faretta because he had been denied access to legal
materials because there is no United States Supreme Court
opinion establishing a federal constitutional right to legal
materials).

**III Conclusion**

Petitioner procedurally defaulted many of his federal
habeas claims in the state courts by not fairly presenting the
federal claim to the state courts in a procedurally correct
manner. Petitioner has not shown cause for, nor prejudice
arising from, his procedurally defaulted claims. Accordingly,
federal habeas relief may not be granted on the merits of those
claims. Additionally, most of Petitioner's claims for federal

habeas relief may be denied on the merits of the claims notwithstanding any failure of Petitioner to properly exhaust the claims. With regard to the claims which were properly exhausted in the Arizona state courts, the state courts' conclusions with regard to these claims was not contrary to nor an unreasonable application of federal law and, therefore, Petitioner is not entitled to habeas relief on these claims.

**IT IS THEREFORE RECOMMENDED** that Mr. Church's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to

timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

DATED this 3rd day of March, 2008.


_____
Mark E. Aspey
United States Magistrate Judge

-64-